UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| In re | Case No. _____ |
|---|---|
| | Amended |
| | **NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING** (Note: Do not use to sell personally identifiable information about individuals.) |
| Debtor(s) | |

**NOTICE IS GIVEN** that _____, the _____ (debtor, trustee, etc.), intends to sell the property described below and moves for authority to sell the property free and clear of liens under 11 U.S.C. § 363(f) and the guidelines set forth in Local Bankruptcy Form 363, *Procedures re: Motions for Sale of All or Substantially All Assets*. The movant's name, address, and phone number are:

_____
_____

If you wish to object to any aspect of the sale or fees disclosed in paragraph 7 or 15, you must:

1. Attend the hearing set in paragraph 16 below; and

2. Within 21 days after the later of the date next to the signature below or the service date in paragraph 17 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401:

   a. a written objection stating the specific facts upon which the objection is based, and

   b. a certificate of service of the objection on the movant.

This document constitutes the notice required by Local Bankruptcy Rule (LBR) 2002-1. All sections must be completed.

1. The specific subsections of 11 U.S.C. § 363(f) movant relies on for authority to sell the property free and clear of liens are:

**760.5 (12/1/2019)**   Page 1 of 4

2. Buyer's name & relation to debtor:

3. General description of the property (if real property, state street address here. Also attach legal description as an exhibit to the notice filed with the court):

4. A copy of the full property description or inventory may be examined or obtained at:

5. The property may be previewed at (include time and place):

6. Other parties to the transaction and their relationship to the debtor are:

7. The gross sale price is: $ _____ .

   All liens on the property total $ _____ , of which movant believes a total of $ _____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable).

   Secured creditor(s) also seek(s) reimbursement of $ _____ for fees and costs.

   Total sales costs will be: $ _____ .

   All tax consequences have been considered, and it presently appears that the sale will result in net proceeds to the estate after payment of valid liens, fees, costs, and taxes of approximately: $ _____ .

8. The sale ___ is ___ is not (mark one) of substantially all of the debtor's assets. Terms and conditions of sale:

9. Competing bids must be submitted to the movant no later than _____ and must exceed the above offer by at least _____ and be on the same or more favorable terms to the estate.

10. Summary of all available information regarding valuation, including any independent appraisals:

11. If paragraph 7 indicates little or no equity for the estate, the reason for the sale is:

    and expenses and taxes resulting from the sale will be paid as follows:

12. (Chapter 11 cases only) The reason for proposing the sale before confirmation of a plan of reorganization is:

13. The following information relates to lienholders (who are listed in priority order):

| Name | Service Address (See FRBP 7004) | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid.) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

14. Any liens not fully paid at closing will attach to the sale proceeds in the same order of priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs, or other charges as provided in this motion, must be held in trust until the court orders payment.

15. (If real property) The court appointed real estate broker, _____, will be paid _____.

16. A hearing on this motion and any objections to the sale or fees is scheduled as follows:
    **Date:** _____ **Time:** _____ **Location:** _____

    Testimony will be received if offered and admissible. If no timely objection is filed, the hearing may be canceled and an order submitted. Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov after the objection deadline has passed.

17. I certify that on _____ this document was served, under FRBP 7004, on the debtor(s), trustee (if any), U.S. Trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys; and (unless movant is a chapter 7 trustee) that it was also sent on that date, pursuant to FRBP 2002(a), to all creditors and all parties as listed in the court's records that were obtained on _____, a copy of which is attached to the document filed with the court.

18. For further information, contact: _____

_____        _____
Date                            Signature & Relation to Movant

                                _____
                                Debtor's Taxpayer ID#(s) (last 4 digits)
                                (If debtor is movant)

# TELEPHONE HEARING REQUIREMENTS

1. You must call in and connect to the telephone hearing line or personally appear in the judge's courtroom no later than your scheduled hearing time. The court will not call you.

2. You may be asked to call again from another phone if your connection is weak or creates static or disruptive noise.

3. Please mute your phone when you are not speaking. If you do not have a mute function on your phone, press *6 to mute and *6 again to unmute if you need to speak. Do not put the court on hold if it will result in music or other noise. If available, set the phone to "Do Not Disturb" so it will not ring during the hearing.

4. When it is time for you to speak, take your phone off the "speaker" option or headset to minimize background noise and improve sound quality. Position the telephone to minimize paper rustling. Do not use a keyboard or talk with others in the room. Be aware that telephone hearings may be amplified throughout the courtroom.

5. Do not announce your presence until the court calls your case. Simply stay on the line, even if there is only silence, until the judge starts the hearings, and then continue to listen quietly until your case is called.

6. Whenever speaking, first identify yourself. When the court calls your case, it's helpful if the moving party speaks first to avoid multiple parties speaking at the same time.

7. Be on time. The judge may handle late calls the same as a late appearance in the courtroom.

Clerk, U.S. Bankruptcy Court

888 (12/1/13)

# STALKING HORSE ASSET PURCHASE AGREEMENT

AGREEMENT made this __ day of April, 2020 between Kenneth S. Eiler, not individually, but solely in his capacity as the Chapter 7 Trustee (the "**Seller**") for the bankruptcy estate of Gary William Seide and Laura Lavender Seide (collectively, the "**Debtor**"), Case No. 15-32939, and JM Partners, LLC, a Virginia limited liability company (the "**Buyer**").

## RECITALS

1.  June 16, 2015 (the "**Petition Date**"), Debtor filed their voluntarily petition under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Oregon.

2.  The Seller is the duly appointed Chapter 7 Trustee for the Debtor's Estate.

3.  Upon the Petition Date, the Debtor was a member of – and held a 27.62% interest in (the "**LLC Interest**") – Brooten Road Project, L.L.C. ("**BRP**"), an Oregon limited liability company. BRP has been making distributions to its members, including the Seller as a holder of the Debtor's interest, which are primarily understood to be generated from a certain secured promissory note held by BRP. It is understood and agreed that the distributions received by the Seller prior to March 20, 2020 are to be retained by the Seller for the benefit of the Debtor's Estate, and that all distributions made on or after March 20, 2020 (the "**Included Distributions**") represent the value being purchased by Buyer, and thus the LLC Interest together with the Included Distributions are hereinafter the "**Asset**". Should the Seller receive any Included Distributions then same shall be held in trust for the Buyer pending Closing (as defined herein) and shall act as a dollar-for-dollar reduction in the final balance of the purchase price at Closing.

4.  The property of the Debtor's estate includes the Asset.

5.  The Asset is governed by that certain Operating Agreement of BRP as was adopted by its members on August 20, 2013 (the "OA").

6.  The Seller desires to sell the Asset free and clear of all liens and encumbrances other than the OA, and the Buyer desires to buy the Asset, subject to the terms and conditions of this Agreement. Seller will conform to any requirements of the OA with respect to the transaction.

## AGREEMENT

Now therefore, the SELLER and BUYER agree as follows:

A.  **Asset to be Transferred.** The Seller agrees to sell and transfer, and the Buyer agrees to buy, subject to the conditions contained herein, the Asset.

B. **Purchase Price**. The Buyer agrees to pay as a total purchase price for the Asset the amount of Twenty Thousand Dollars ($20,000.00) in consideration of the sale and transfer of the Asset (the "**Purchase Price**").

C. **Bankruptcy Court Approval**. The obligations of the Seller to sell and transfer and the obligations of the Buyer to purchase are expressly conditioned upon the approval by the Bankruptcy Court of the Chapter 7 Trustee's motions for entry of orders*: (A) Authorizing the Sale of the Debtor's Asset Free and Clear of All Liens, Claims Encumbrances And Interests; and (B) Approving Bid Procedures with Prospective Purchaser Identified* ("**Sale and Bid Procedures Motion**") at the Purchase Price or at a higher price established an at Auction which may be held with individuals or entities who submit counteroffers acceptable to the Seller. For clarity, it is understood that Seller shall first seek approval of this Agreement by moving for Bid Procedures, including the approval of the Breakup Fee, and the establishment of Overbid or Bid Qualifying procedures, and setting the potential auction. Once Bid Procedures and this Agreement have been approved, Seller shall broadly notice the potential sale, including specifically to BRP and its members.

D. **Offer Subject to Counteroffers**. The Buyer is aware that the Seller will provide in Notice of the Sale and Bid Procedures Motion, as required by the Bankruptcy Rules 2002(a)(2) and 6004, and Rule 6004-5 of the Local Rules of the United States Bankruptcy Court for the District of Oregon, which may lead to objection from parties-in-interest and\or the submission of counteroffer at Auction. The Buyer will not be required to be present at any hearing related to this matter unless same is schedule for a mutually agreeable time and date, and conducted telephonically. Buyer further does not intent to oppose any objection filed (though Buyer supports any such opposition to same that might be offered by the Trustee).

E. **Good Faith Purchaser Designation**. Should the Bankruptcy Court approve the sale to the Buyer, the Order approving the sale shall contain language finding the Buyer to be an arms-length purchaser, and the transaction to have been made in good faith, and that the Buyer is entitled to the benefit of such designations as provided under the Bankruptcy Code, as well as language specifically authorizing the Seller to sign any and all documents to consummate the transaction, whether known at the Closing (defined below) or which become known thereafter.

F. **Final Order**. For the purposes of this Agreement, "Final Order" shall mean an order entered by a court of competent jurisdiction that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not prevent such order from being a Final Order.

G. **As Is/Where Is**. Buyer acknowledges and agrees that Seller is selling the Assets "AS IS, WHERE IS" with no representations or warranties, express or implied, of any kind whatsoever, except for the representations and warranties contained in this Agreement. Buyer is relying solely upon Buyer's own inspections and evaluations of the Assets and OA and due diligence investigations with respect to the Assets and the conditions and restrictions related thereto.

H. **Closing.** The closing of the sale of the Assets shall take at a mutually agreeable time not earlier than the 14th day following entry of the Final Order (defined herein) authorizing the Agreement, or the next following mutually agreeable date, but in no event more than thirty (30) days following entry of the Final Order unless the Bankruptcy Court enters an order staying the sale (the "**Closing**").

I. **Transfer Document**. The Asset is to be conveyed by a mutually acceptable transfer document running to the Buyer, or to the nominee designated by the Buyer by written notice to the Seller at least two (2) days before the transfer document is to be delivered as herein provided. The Seller, at his cost, shall supply the Buyer with the transfer document.

J. **Additional Documentation**. The Seller shall provide a copy of any and all documentation he/she /it might have related to the Debtor's Asset in any fashion.

K. **Seller's Closing Costs and Obligations**. The Seller shall prepare and provide in a form sufficient for a valid recording, and bear the cost of obtaining: (i) a copy of the Bankruptcy Court order approving the sale of the Asset to the Buyer; and (ii) a certificate issued by the clerk of the Bankruptcy Court evidencing the Seller's noticing of the Sale of the Asset.

L. **Buyer's Closing Costs**. Except as set forth in the above paragraph J, Buyer shall be responsible for the payment of all other Closing costs in connection with the Closing, including but not limited to its legal fees and the its incidental closing expenses.

M. **Notification to BRP**. Subsequent to the Closing, the Seller agrees to send a letter to the Manager and copy same to all known members of BRP stating that pursuant to the authority of the Bankruptcy Court, the ownership of the Asset has been transferred to the Buyer, to supply BRP with copies of the Documentation, and to instruction BRP to change the ownership on their books and records to the Buyer.

N. **Purchase is Free and Clear of all Liens, Claims, Encumbrances and Assets**. The Seller shall sell and transfer the Asset in free and clear condition of any and all liens, claims, and encumbrances.

O. **Representations and Warranties**. The Asset is being sold "AS IS" and "WHERE IS" without any representations or warranties.

P.  **Acceptance of Transfer Document**.  The acceptance and recording of a transfer document by the Buyer or his nominee as the case may be, and the payment of the Purchase Price, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said transfer document.

Q.  **Buyer's Default**.  If the Buyer shall fail to fulfill his obligations herein, Seller may deem the bidder of the second highest and best bid for the Asset (such bidder being the "**Backup Bidder**," with such bid being the "**Backup Bid**") to have submitted the Prevailing Bid. If Seller so designates a bidder as a Backup Bidder, such Backup Bidder shall be required to complete and execute an APA in form and substance reasonably acceptable to Seller memorializing, among other things, the amount of the Backup Bid (a "**Backup Bidder APA**")**.**

R.  **Contingencies**.  There are no contingencies to the sale of the Asset other than Bankruptcy Court approval, which could result in the acceptance of a higher offer from another party.

S.  **Nonrecourse**.  The Seller is executing this Agreement in a fiduciary capacity; only the Estate shall be bound, and the Seller shall not be personally liable for any obligation, expressed or implied, hereunder.

T.  **Modification**.  This Agreement contains the entire agreement of the parties and may be amended only by written instrument signed by the parties.

U.  **Assignment**.  The Buyer may assign its rights and obligations under this Agreement without the need of further approval from the Seller or the Bankruptcy Court.

V.  **Liability to Trustee, Shareholder, Beneficiary, Etc**.  If the Seller or Buyer executes this Agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the Seller or Buyer so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

W.  **Break-up Fee**.  In the event that the Seller sells the Asset to a party other than the Buyer, the Seller agrees to pay the Buyer the sum of $2,000.00 as a Break-up Fee (the "**BUF**"), an amount the Seller feels is appropriate in this transaction to entice the Buyer to enter the bidding and to provide reasonable compensation for the resources the Buyer is expending in pursuing his due diligence concerning the Asset, and for providing a quality minimum floor price for a generally illiquid asset.  The Seller agrees that the Sale and Bid Procedures Motion to be filed with the Bankruptcy Court requests the payment of the BUF, and that any Orders approving the sale of the Asset to any other buyer will direct the Estate to pay the BUF to the Buyer. The Seller shall pay the BUF within seven (7) business days of the closing with a buyer of the Asset other than the Buyer.

X. **Failure to Obtain Approval of the Breakup Fee.** Should the Court fail to approve the BUF as described in paragraph V above, this Agreement shall be null and void and of no further force and effect.

Y. **Entire Agreement**. This Agreement shall constitute the complete agreement and understanding of the parties hereto with respect to the transactions contemplated hereby and supersedes all prior agreements and understandings, written or oral, and may be amended only by written instrument signed by both of them. To the extent that there is any conflict between the terms of the Notice of Sale served in accordance with Section 363 of the Bankruptcy Code and this Agreement, the terms of this Agreement shall control. This Agreement shall be construed in accordance with the laws of the State of Oregon and Title 11 of the United States Code.

Z. **Authority of Parties**. Each of the undersigned parties represents and warrants that: (i) it has all necessary power and authority to execute and deliver this Agreement and to perform its respective obligations hereunder; (ii) this Agreement has been duly and validly delivered, and constitutes a legal, valid and binding obligation; and (iii) except for approval of the Bankruptcy Court, no authorization, consent, approval or other action is or will be necessary as a condition to execution and delivery of this Agreement and the performance of the obligations hereunder.

AA. **Execution in Counterparts**. For the convenience of the parties and to facilitate execution, this Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same document.

BB. **Advice of Counsel**. The Buyer confirms that it has obtained or had the opportunity to obtain the advice of counsel of its choice in connection with the execution of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement in two counterparts on the day and year first above written.

The Buyer and Seller hereby agree to the terms set forth above.

Seller:

Buyer:

Kenneth S. Eiler, not individually, but solely in his capacity as the Chapter 7 Trustee of the Estate of Gary William Seide and Laura Lavender Seide, Case 15-32939 in the United States Bankruptcy Court for the District of Oregon.

John J. Marshall / Managing Member
JM Partners LLC